# In the United States Court of Federal Claims

No. 11-297C

(Filed: March 28, 2013)

* * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| DAVITA, INC., | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| UNITED STATES OF AMERICA, | * |
| | * |
| Defendant. | * |

Tucker Act, 28 U.S.C. § 1491(a); Subject-Matter Jurisdiction; Contract Disputes Act, 41 U.S.C. §§ 601-12; Contracts for Hospital Care and Medical Services in Non-Department Facilities, 38 U.S.C. § 1703; 38 C.F.R. § 17.56; Authorizations; Money-Mandating Regulation; Failure to State a Claim upon Which Relief Can Be Granted.

* * * * * * * * * * * * * * * * * * * * * * * *

Bobby R. Burchfield, Paul M. Thompson, and Matthew M. Leland, McDermott Will & Emery, 600 Thirteenth Street, NW, Washington, D.C. 20005, for Plaintiff.

Stuart F. Delery, Jeanne E. Davidson, Martin F. Hockey, Jr., and John Sinclair Groat, United States Department of Justice, Civil Division, Post Office Box 480, Ben Franklin Station, Washington, D.C. 20044, for Defendant. Dennis Foley, Carrie Parish, and Ogochukeu Ekwuabu, Department of Veterans Affairs, of Counsel.

---

## OPINION AND ORDER

---

**WILLIAMS**, Judge.

In this action, Plaintiff, Davita, Inc., ("DaVita") brings two claims. In Count I of its complaint, Plaintiff claims that the Department of Veterans Affairs ("VA") underpaid it for dialysis services under a regulatory scheme -- not under a contract -- by failing to pay the rates mandated by 38 C.F.R. § 17.56. In Count II, Plaintiff claims that the VA paid it less than contractually mandated amounts for dialysis services it provided under a 2009 contract. Plaintiff does not seek monetary relief in its contract claim but rather a declaratory judgment that "the VA is required to pay DaVita in accordance with the Contract for all covered services provided . . . ." Am. Compl. 14.

This case comes before the Court on Defendant's motion to dismiss Plaintiff's first amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). Defendant argues that the Court lacks jurisdiction over

Count I because Plaintiff's claim sounded in contract but Plaintiff failed to submit a claim to a contracting officer as required by the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 7101-09.  In the alternative, Defendant contends that 38 C.F.R. § 17.56 cannot serve as a basis for jurisdiction because it is not money-mandating.  In addition, Defendant contends this regulation was invalid from March 2005, until it was amended in February 2011, because it was not promulgated in accordance with the Administrative Procedure Act's notice and comment requirements.  With respect to Count II, Defendant contends that the Court lacks CDA jurisdiction because Plaintiff failed to present a certified claim for a sum certain to the contracting officer.  Further, Defendant argues Plaintiff failed to state a claim upon which relief can be granted because the Court cannot provide the relief Plaintiff seeks.  Because the Court finds that it has jurisdiction over both counts and can provide the requested relief, Defendant's motion to dismiss is **DENIED**.

## Background[1]

### The Solicitation and Contract Award

On March 31, 2009, the VA issued a pre-solicitation notice seeking proposals for dialysis services for VA beneficiaries within eight Veteran Integrated Service Networks.  These eight networks are geographically-based health care systems with medical centers, outpatient clinics, and nursing homes.  The United States and its territories are divided into 23 such networks.  The notice provided that the procurement would be conducted pursuant to the Federal Acquisition Regulation ("FAR") Parts 12 and 15.

On July 1, 2009, the VA issued Request for Proposals ("RFP") number VA-791-09-RP-0007.  DaVita submitted a proposal, and the VA awarded DaVita the contract, effective October 9, 2009.  The contract was an indefinite delivery, indefinite quantity ("IDIQ") contract, and the contract period was to run from the date of award through September 30, 2010, with four one-year options.  The minimum total was $30,000 and the maximum $1.2 million (inclusive of the base and all option years), and the contract contained 10 pages of fee schedules for services to be provided within each of the eight Veteran Integrated Service Networks.  See Am. Compl., Ex. A, App. 6-15.

Additionally, the contract delineated the process for ordering services under the contract as follows:

B.2 SPECIAL CONTRACT REQUIREMENTS

Under the authority of Public Law 104-262 and 38 USC 8153, the contractor agrees to provide Health Care Resources in accordance with the terms and conditions stated herein, to furnish to and at the Department of Veterans Affairs Medical Center, the services and prices specified in the Section entitled Schedule of Supplies/Services of this contract.

---

[1] This background is derived from Plaintiff's first amended complaint and the exhibits/appendices to the parties' motion papers.  "Tr." refers to the transcript of the oral argument on Defendant's motion, held on November 1, 2012.  The Court ordered supplemental briefing after oral argument, which was completed on December 7, 2012.

. . .

3.   ORDERING PROCEDURES

Orders will be placed by the [Veterans Affairs Medical Center] via an authorization to the contracted facility that is closest in proximity to the Veteran[']s place of residence, the Veteran[']s preference, and/or per clinical direction of the VA patient's physician or treatment provider (this includes VA social workers).

. . .

3.3 Orders will be placed via authorization.

3.4 Orders placed under this contract will contain the following information:

3.4.1 Date of Order.

3.4.2 Authorization number.

3.4.3 Patient information including diagnosis code and modality.

3.4.4 Authorization time period.

3.4.5 Dialysis Treatment Center Location and company name

3.4.6 Timely filing claims submission requirements

3.4.7 Address location for [Electronic Data Interchange] submission and paper claims

3.4.8 Originating facility of authorization

Am. Compl., Ex. A, App. 18.  Furthermore, the contract provided that "[a]ll delivery orders or task orders are subject to the terms and conditions of this contract.  In the event of conflict between a delivery order or task order and this contract, the contract shall control."  Am. Compl., Ex. A, App. 39.  Disputes were to be handled under the Contract Disputes Act of 1978, as amended (41 U.S.C. §§ 601-613), and FAR 52.233-1.

**<u>The Legal Regime Governing Dialysis Services Provided By Non-VA Facilities</u>**

The VA has the authority to contract with nongovernmental facilities to furnish medical services to veterans.  38 U.S.C. § 1703 (2006).  VA regulations and directives of the Veterans Health Administration ("VHA")[2] govern the VA's arrangements with non-VA health care providers.  The VA may use individual authorizations when there is infrequent demand for such care or services.  <u>Id.</u>  The VA has applied this regulation specifically to dialysis services, and

---

[2] The VHA, a component of the VA, implements the VA's medical assistance program.  <u>See</u> 38 U.S.C. § 7301 (2006).

issued a directive stating: "[b]ecause dialysis care must be provided on an ongoing, long-term basis, it generally should be authorized under a contract rather than on a fee for service basis." Am. Compl., Ex. B, App. 55 (VHA Directive 2007-025, Attach. A, ¶ 2(c)).  When a contract is in effect, "the contracted agreement amount is to be paid."  Am. Compl., Ex. B, App. 56 (VHA Directive 2007-025, Attach. A, ¶ 2(f)).  "In the absence of a contract, payment of authorized non-VA dialysis treatment is assigned as provided by 38 CFR § 17.56 . . . ." Am. Compl., Ex. B, App. 56 (VHA Directive 2007-025, Attach. A, ¶ 2(e)).

If the VA does not have a contract covering the health services a veteran requires, the VA issues an authorization to the veteran, who then presents the authorization to a health care service provider such as DaVita.  Payment is governed by 38 C.F.R. § 17.56.  Administrative assistants at approximately 150 VA Medical Centers issue the authorizations to veterans.  Section 17.56 of Title 38 of the Code of Federal Regulations applies to services provided without a contract, pursuant to authorizations.  The version of § 17.56 effective from 2000 until March 6, 2005, provided:

Payment for non-VA physician services associated with outpatient and inpatient care provided at non-VA facilities.

(a) Except for anesthesia services, payment for non-VA physician services associated with outpatient and inpatient care provided at non-VA facilities authorized under § 17.52 or made under § 17.120 of this part, shall be the lesser of the amount billed or the amount calculated using the formula developed by the Department of Health & Human Services, Health Care Financing Administration (HCFA) under Medicare's participating physician fee schedule for the period in which the service is provided . . . . This payment methodology is set forth in paragraph (b) of this section.  If no amount has been calculated under Medicare's participating physician fee schedule or if the services constitute anesthesia services, payment for such non-VA health care professional services associated with outpatient and inpatient care provided at non-VA facilities . . . shall be the lesser of the actual amount billed or the amount calculated using the 75th percentile methodology set forth in paragraph (c) of this section; or the usual and customary rate if there are fewer than 8 treatment occurrences for a procedure during the previous fiscal year.

. . .

(c) Payment under the 75th percentile methodology is determined for each VA medical facility by ranking all occurrences (with a minimum of eight) under the corresponding code during the previous fiscal year with charges ranked from the highest rate billed to the lowest rate billed and the charge falling at the 75th percentile as the maximum amount to be paid.

(d) Payments made in accordance with this section shall constitute payment in full.  Accordingly, the provider or agent for the provider may not impose any additional charge for any services for which payment is made by VA.

4

38 C.F.R. § 17.56 (2000).

In February 2005, the VA amended 38 C.F.R. § 17.56, Payment for Non-VA Physician and Other Health Care Professional Services Associated With Either Outpatient or Inpatient Care Provided at Non-VA Facilities. 70 Fed. Reg. 5926-01 (Feb. 4, 2005). The rule change primarily concerned the establishment of an Alaska-specific methodology for reimbursement. At the same time, the VA also made what it characterized as "[a] number of technical changes of a non-substantive nature," including changing the phrase "non-VA physician services" to "non-VA health care professional services" associated with outpatient and inpatient care. Id. The notice in the Federal Register explained:

> The use of the phrase "non-VA physician," both in the title of 38 CFR 17.56 and throughout the regulation, is imprecise, as the rule applies to all non-VA physician and other health care professional services associated with outpatient or inpatient care provided at non-VA facilities. In order to reconcile the terminology used in this rule with common practice in VA, the phrase "non-VA physician" will be replaced with "non-VA health care professional services."

Id. This "technical change" was not subject to notice and comment.

In 2008, without amending 38 C.F.R. § 17.56, the VA announced that it would begin reimbursing dialysis providers at Medicare rates, effective January 1, 2009. Am. Compl. ¶ 46. Before this policy change, the VA reimbursed DaVita for dialysis services using the 75th percentile methodology. See Am. Compl. ¶¶ 23-26. On November 18, 2009, the VA's National Fee Program Office Manager issued a letter to providers that again changed the VA's position on dialysis payments. Am. Compl., Ex. G, App. 92. The letter stated that the VA had adopted the Medicare fee schedule to pay for dialysis treatment claims resulting from treatment provided pursuant to the regulatory scheme earlier that year, but it had since determined that the "VA was not authorized to use the Medicare payment schedules to pay for these services." Id. The VA stated that in the absence of a contract, the VA would reimburse providers at the lesser of the actual amount billed or the 75th percentile methodology set forth in 38 C.F.R. § 17.56(c). The VA informed providers that it would reconsider claims for dialysis services that had been erroneously reimbursed at Medicare rates if submitted to the Financial Services Center within 90 days. Id.

**The Dispute Over Reimbursement**

DaVita alleges that when it began to perform under the contract in late 2009, VA Medical Centers sent DaVita authorizations containing prices lower than those set forth in the contract. Am. Compl. ¶ 42. DaVita objected to the lower prices but continued to provide services to veterans. Id. at ¶ 43. On January 13, 2010, DaVita filed what it termed a "formal request" with the contracting officer, stating:

> Since October 8, 2009, the effective date of the above-referenced contract, DaVita has received multiple Fee Basis authorizations for dialysis services from Veteran Integrated Service Networks (VISN)/VMACs that fall within the scope of DaVita's VA Contract, in which those VISNs and/or VMACs are refusing to

honor the Contract rate as payment for the ordered services . . . . DaVita requests that the Contracting Officer issue a Final Decision, interpreting the Contract to require that all authorizations for dialysis services issued to DaVita by the VISNs covered by the Contract . . . are orders under the Contract that must be paid for at the Contract rate.

Am. Compl., Ex. H, App. 94-99.

The contracting officer denied Plaintiff's request four months later, on May 14, 2010. Am. Compl., Ex. I, App. 101-03.   The contracting officer rejected the notion that all authorizations issued to DaVita from Veteran Integrated Service Networks were subject to the contract, stating:

Authorizations are only considered orders under the contract if used against this contract and identified as such.   Those orders would then be subject to the contract terms and conditions of the contract, and payment will be made in accordance with the contracted rates.  Providers and facilities retain their authority to send out fee authorizations under their other dialysis arrangements.  This is a business decision within the authority of the [Veteran Integrated Service Networks] and is not abrogated by these subject contracts.

Am. Compl., Ex. I, App. 102.  The contracting officer distinguished DaVita's contract -- an IDIQ contract -- from a requirements contract, and stated that once the guaranteed contract minimums were met, the VA could procure the services outside the contract without using the contract rates. Id.

In addition to providing dialysis services to the VA under the contract, DaVita provided dialysis services outside the contract via authorizations from 2005 to 2010.  In 2009, DaVita's claims for out-of-scope services were reimbursed according to the Medicare fee schedule -- rather than the 75th percentile methodology that the VA had generally used previously.  See Am. Compl. ¶ 30.   As advised in the November 18, 2009 letter from the VA, directing dialysis providers to submit prior dialysis claims to be reimbursed at the 75th percentile rate, DaVita resubmitted its non-contract claims to the Financial Services Center.  Id. at ¶ 47.  When the Financial Services Center denied the resubmitted claims, DaVita appealed the denials to specific Veterans Affairs Medical Centers, as the Financial Services Center instructed.  On May 12, 2011, after the contracting officer denied DaVita's contract-based claim and the Financial Services Center denied its authorization-based claims, Plaintiff filed a complaint in this Court.[3]

---

[3] The VA amended 38 C.F.R. § 17.56 in 2011, to provide for payment at the Medicare rate rather than the 75th percentile rate.   Payment for Inpatient and Outpatient Health Care Professional Services at Non-Departmental Facilities and Other Medical Charges Associated With Non-VA Outpatient Care, 75 Fed. Reg. 78,901 (Dec. 17, 2010).  This case does not involve any claims for dialysis services provided after the 2011 amendment took effect.

## Discussion

### Subject-Matter Jurisdiction

When adjudicating a motion to dismiss for lack of subject-matter jurisdiction under RCFC 12(b)(1), the Court assumes all factual allegations in the complaint to be true and construes "all reasonable inferences in plaintiff's favor." Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). Plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence before the Court may consider the merits of the action. Id. (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)); see also Naskar v. United States, 82 Fed. Cl. 319, 320 (2008); BearingPoint, Inc. v. United States, 77 Fed. Cl. 189, 193 (2007). If the Court determines at any time that it lacks subject-matter jurisdiction, the Court must dismiss the action. Stuart v. United States, 100 Fed. Cl. 74, 76 (2011).

The Tucker Act grants this Court jurisdiction to hear claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort . . . ." 28 U.S.C. § 1491(a)(1) (2011). The Tucker Act is only a jurisdictional statute. United States v. Testan, 424 U.S. 392, 398 (1976). It does not provide a stand-alone basis for a cause of action, meaning "a plaintiff must identify a separate source of substantive law that creates the right to money damages." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (partial en banc). A statute is money-mandating if it "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." Blueport Co. v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008) (quoting United States v. Mitchell, 463 U.S. 206, 216-17 (1983)). Further, a statute is money-mandating if it expressly or implicitly provides the claimant with the right to recover damages. Id. at 1383 (citation omitted).

The Tucker Act expressly gives the Court of Federal Claims jurisdiction over certain disputes arising under the CDA, stating:

> The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

28 U.S.C. § 1491(a)(2) (2006). To invoke this Court's jurisdiction, a CDA claim must satisfy the CDA's prerequisites. The CDA requires that a contractor present its claim to the contracting officer in writing. 41 U.S.C. § 605(a) (2006). Further, the CDA provides that a contractor can appeal the contracting officer's decision directly to the Court of Federal Claims within 12 months from the date of receipt of a contracting officer's decision. 41 U.S.C. § 609(a) (2006).

Although the CDA does not define "claim," the Federal Acquisition Regulation (FAR) defines a claim as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or

interpretation of contract terms, or other relief arising from or relating to the contract." 48 C.F.R. § 2.101 (2005). Thus, the elements of a claim are: (i) a written demand, (ii) seeking, as a matter of right, (iii) the payment of money in a sum certain. James M. Ellett Construction Co. v. United States, 93 F.3d 1537, 1542 (Fed. Cir. 1996); Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc). Routine requests for payments are not claims. Id. A claim seeking $10,000 or more must be certified; certification requires the contractor to aver that the claim is made in good faith, that the supporting information is accurate and complete to the best of the contractor's knowledge, that the amount requested accurately reflects the amount for which the contractor believes the government is liable, and that the certifier is authorized to certify the claim on behalf of the contractor. 41 U.S.C. § 7103 (2006). A claim must also request a final decision by the contracting officer. Id.; M. Maropakis Carpentry, Inc. v. United States, 609 F.3d 1323, 1327 (Fed. Cir. 2010); Ellett, 93 F.3d at 1543. If a contractor's submission fails to meet these requirements, then the contractor has not submitted a "claim" -- a necessary prerequisite to invoke this Court's jurisdiction under the CDA. Maropakis, 609 F.3d at 1329 ("[T]here is nothing in the CDA that excuses contractor compliance with the explicit CDA requirements.").

**The Court Has Jurisdiction over Plaintiff's Claim that the VA Violated 38 C.F.R. § 17.56 By Underpaying It for Dialysis Services.**

In Count I of its amended complaint, Plaintiff alleges that Defendant violated 38 C.F.R. § 17.56 by underpaying DaVita for services it provided pursuant to this regulatory scheme. Defendant argues that the Court lacks jurisdiction because the VA acquired the dialysis services at issue pursuant to a contract and Plaintiff failed to present a claim to the contracting officer, as required by the CDA. Alternatively, Defendant contends that this Court lacks subject-matter jurisdiction over Count I because 38 C.F.R. § 17.56 cannot serve as a basis for jurisdiction, because § 17.56 is not money-mandating and because the VA amended § 17.56 in 2005, without the requisite notice and comment procedures, rendering the regulation invalid from March 2005, until it was amended again in 2011.

**Plaintiff's Claims for Underpayment Predicated on § 17.56 Are Not Subject to the CDA**

Plaintiff contends that it provided the dialysis services at issue in Count I pursuant to authorizations, which are not contracts. Plaintiff estimates that there were thousands of individual authorizations. Tr. 47. Defendant does not suggest that these authorizations were issued under a separate umbrella contract. Rather, Defendant argues that the authorizations themselves were contracts and that Plaintiff was required to comply with the CDA's requirements and file a separate claim with the contracting officer with respect to each authorization before bringing its claims in this Court.

The statutory and regulatory framework governing the provision of medical services to veterans establishes that the authorizations at issue are not contracts. Rather, authorizations are separate instruments to be used when a particular medical service is not available under an existing contract. Dialysis services are a type of "medical services." See 38 U.S.C. § 1701(6) (2006). Section 1703(a) of Title 38 authorizes the Secretary to "contract with non-Department facilities" to provide medical or health care services to veterans. 38 U.S.C. § 1703(a) (2006). Under the VA's implementing regulations, the authority to issue authorizations under $10,000

when medical services are not available under existing contracts is delegated to specified medical and administrative personnel as follows:

Medical, dental, and ancillary service.

(a) The Chief of Staff, the physician assigned the responsibility for the ambulatory care function, and Chief, Medical Administration Service (MAS), or the person designated by the medical center director to perform MAS functions, at a Department of Veterans Affairs facility are delegated authority to execute authorizations for medical, dental, and ancillary services under $10,000 per authorization when such services are not available from existing contracts or agreements. Forms specified in Part 853 of this chapter will be used for this purpose and when ordering such services from existing contracts.

(b) The contracting officers named in paragraph (a) of this section may designate one or more of their subordinates to execute the forms for purposes stated in paragraph (a) of this section. Designations will be in writing and will specifically set forth the scope and limitations of the designee's authority.

48 C.F.R. § 801.670-3 (2005) (emphasis added).[4]

Similarly, 48 C.F.R. § 801.670-3 states that the VA may "execute authorizations . . . when such services are not available from existing contracts or agreements." 48 C.F.R. § 801.670-3 (2005); see also 48 C.F.R. § 801.670-3 (2008) (same). Finally, § 813.307 states that VA Form 10-7079, Request for Outpatient Medical Services, is to be used when ordering "medical, dental and ancillary services up to $10,000 per authorization when such services are not available under existing contracts." 48 C.F.R. § 813.307(b)(2) (2005) (emphasis added); see also 48 C.F.R. § 813.307 (2008) (same). The authorizations under which Plaintiff provided the subject dialysis services to veterans are VA Form 10-7079's. See Def.'s Supp. Br., App. 1-6; Pl.'s Supp. Br., Exs. A-H.

On September 12, 2007, the VHA issued VHA Directive 2007-025, Non-VA Dialysis Care, which makes the same distinction. Am. Compl., Ex. B, App. 53-60.[5] Directive 2007-025 defines "Individual Non-VA Provider Authorization" as an authorization "issued to a non-VA provider for the provision of specified medical services to an individual veteran," and

---

[4] Section 801.670-3 was amended in 2008. The 2008 version differs from the earlier version in two respects. First, it identified personnel responsible for executing authorizations by position (Chief of Staff, Chief Medical Administrator, etc.) but states they can designate subordinates to exercise the authority. Second, the amended version requires the designation to "be in writing and specifically set forth the scope and limitations of the designee's authority." 48 C.F.R. 801.670-3(d) (2008).

[5] VHA Directives are not formal regulations. Rather, a VHA Directive is an "informal statement of agency views" and is "entitled to deference only insofar as it represents a persuasive construction of the statute at issue." James v. Von Zemenszky, 284 F.3d 1310, 1319 (Fed. Cir. 2002).

distinguishes between authorizations and contracts, stating: "Individual Non-VA Provider authorizations are only to be used when a local facility determines the demand for care is not sufficient to support a contract or negotiated agreement." Id.

In addition, the VA's regulations set up a clear dichotomy between contracts and authorizations, explaining that authorizations may be used in lieu of contracts when the demand for a given medical service is infrequent. Specifically, 38 C.F.R. § 17.52 provides:

> When VA facilities or other government facilities are not capable of furnishing economical hospital care or medical services because of geographic inaccessibility or are not capable of furnishing care or services required, the VA may contract with non-VA facilities for care in accordance with the provisions of this section. When demand is only for infrequent use, individual authorizations may be used . . . .

38 C.F.R. § 17.52(a) (2005).

Here, Plaintiff has alleged that the subject individual authorizations were not issued pursuant to an existing contract. The VA regulations and VHA Directive support Plaintiff's position that such authorizations did not in and of themselves constitute contracts between DaVita and the Government. Rather, upon receipt of a VA authorization, the veteran presents the authorization to a dialysis provider, such as DaVita, to receive treatment. The dialysis provider then submits the authorization to the VA for payment. Such authorizations are analogous to purchase orders. See Bel Pre Health Care Ctr., Inc. v. United States, 24 Cl. Ct. 495, 497 (1991), aff'd 980 F.2d 745 (Fed. Cir. 1992) ("The authorization referred to, 'VA Form 10-7078--Authorization and Invoice for Medical and Hospital Services,' is essentially a purchase order for procurement of the nursing care services . . . .").

It is well established that a purchase order is not a contract. Rather, the Government's issuance of a purchase order is an offer to enter into a unilateral contract, and the Government is not bound until the date of performance. "A purchase order 'is an offer by the government to the supplier to buy certain supplies or services upon specific conditions. A contract is established when the supplier accepts the order, by furnishing the supplies or services ordered or by . . . substantial performance prior to the due date.'" Canal 66 P'ship v. United States, 87 Fed. Cl. 722, 726 (2009) (quoting Zhengxing v. United States, 71 Fed. Cl. 732, 738 n. 21 (2006)); FAR 13.004(b) (2006) ("[T]he supplier may indicate acceptance by furnishing the supplies or services ordered or by proceeding with the work to the point where substantial performance has occurred."); see also Smart Bus. Mach. v. United States, 72 Fed. Cl. 706, 708 (2006); Appeal of Master Research & Mfg., Inc., ASBCA. No. 46341, 94-2 BCA ¶ 26747 (citations omitted). As the Bel Pre Court stated, "[p]roperly interpreted, the words of the authorization set out expectancy -- as opposed to a duty -- on the Government's part to call upon plaintiff's services . . . . To read more than this into the words of the authorization is to twist their meaning." Id. at 498. Moreover, as Plaintiff points out, on the face of the authorizations, the VA expressly disclaimed any intent to contract, stating: "[t]his referral is not a contract" -- a phrase that appears on many of the authorizations that the parties submitted. See, e.g., Pl.'s Supp. Br., Exs. A-D.

In sum, VA authorizations issued to individual veterans for dialysis treatment are not contracts and are not subject to the CDA.  As such, Plaintiff was not required to submit claims to the contracting officer in order to seek payment under each authorization.

## 38 C.F.R. § 17.56 Is a Money-Mandating Regulation and Provides a Basis for Jurisdiction under the Tucker Act

Defendant contends that even if the authorizations are not contracts, the Court lacks jurisdiction over Count I because 38 C.F.R. § 17.56 is not money-mandating.  When a plaintiff files a complaint alleging a Tucker Act claim, the Court must determine at the outset whether the plaintiff's claim is based on a money-mandating statute, regulation, or Constitutional provision. Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005).  A statute is money-mandating "if, but only if, it can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained."  United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003) (citations omitted).

Section 17.56 provides, in relevant part:

Payment for non-VA physician services associated with outpatient and inpatient care provided at non-VA facilities authorized under § 17.52, or made under § 17.120 of this part, shall be the lesser of the amount billed or the amount calculated using the formula developed by the Department of Health & Human Services, Health Care Financing Administration (HCFA) under Medicare's participating physician fee schedule for the period in which the service is provided (see 42 CFR Parts 414 and 415).

38 C.F.R. § 17.56(a) (2005) (emphasis added).[6]  The regulation can be "fairly interpreted as mandating compensation" when a non-VA provider affords authorized health care services to

---

[6] 38 C.F.R. § 17.52 provides, in part:

When VA facilities or other government facilities are not capable of furnishing economical hospital care or medical services because of geographic inaccessibility or are not capable of furnishing care or services required, VA may contract with non-VA facilities for care in accordance with the provisions of this section. When demand is only for infrequent use, individual authorizations may be used.

38 C.F.R. § 17.52(a) (2005).

38 C.F.R. § 17.120 states, in part:

To the extent allowable, payment or reimbursement of the expenses of care, not previously authorized, in a private or public (or Federal) hospital not operated by the Department of Veterans Affairs, or of any medical services not previously authorized including transportation (except prosthetic appliances, similar devices,

veterans because the regulation states that the VA <u>shall</u> pay non-VA providers at either of two specified rates.  <u>White Mountain Apache Tribe</u>, 537 U.S. at 472; <u>see Fisher</u>, 402 F.3d at 1174-75 (finding a statute money-mandating when it required the Government to pay benefits to recipients who met the statute's requirements).  Using the word "shall" generally renders a provision money-mandating.  <u>Agiwak v. United States</u>, 347 F.3d 1375, 1380 (Fed. Cir. 2003) (citing <u>McBryde v. United States</u>, 299 F.3d 1357, 1361 (Fed. Cir. 2002); <u>Huston v. United States</u>, 956 F.2d 259, 261-62 (Fed. Cir. 1992); <u>Grav v. United States</u>, 886 F.2d 1305, 1307 (Fed. Cir. 1989)).  Because § 17.56 compels reimbursement once a health care provider furnishes authorized dialysis services at non-VA facilities, the regulation is money-mandating.

**<u>The Fact that the 2005 Amendment to § 17.56 Was Not Subject to Notice and Comment Does Not Prevent this Court from Invoking the Regulation As a Basis for Tucker Act Jurisdiction</u>**

In a further attempt to avoid Tucker Act jurisdiction, Defendant has taken the highly unusual stance of asking the Court to find that Defendant's own rulemaking was illegal and its resultant regulation -- which Defendant followed from March 2005 until February 2011 -- was invalid.  Defendant argues that even if § 17.56 is money-mandating, it cannot provide a jurisdictional basis for Plaintiff's claim because the 2005 amendment to this regulation was adopted without notice and comment contrary to 41 U.S.C. § 418b (2006) and 5 U.S.C. § 553 (2006), rendering the regulation invalid until it was amended in 2011.[7]  Defendant's position is

---

and repairs) may be paid on the basis of a claim timely filed, under the following circumstances . . . .

38 C.F.R. § 17.120 (2005).

[7] Defendant does not contend that the regulation is unconstitutional or that it conflicts with statute.

41 U.S.C. § 418b, Publication of proposed regulation, provides in relevant part:

Except as provided in subsection (d) of this section, no procurement policy, regulation, procedure, or form (including amendments or modifications thereto) relating to the expenditure of appropriated funds that has (1) a significant effect beyond the internal operating procedures of the agency issuing the procurement policy, regulation, procedure or form, or (2) a significant cost or administrative impact on contractors or offerors, may take effect until 60 days after the procurement policy, regulation, procedure, or form is published for public comment in the Federal Register pursuant to subsection (b) of this section.

41 U.S.C. § 418b(a) (2006).  Section 553 of Title 5, Rule making, provides that "[g]eneral notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law" and "[a]fter notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data,

untenable for several reasons. First, Defendant improperly seeks to benefit from its own procedural violation. Second, Defendant's post hoc attack on its own regulation does not affect whether Plaintiff made a nonfrivolous allegation that the regulation may be interpreted as money-mandating for purposes of jurisdiction. Third, in any event, this Court's acknowledgement that the regulation was procedurally infirm would not operate to vacate the regulation, destroy Tucker Act jurisdiction, or nullify the regulation as a basis for relief.

The Government's effort to have the Court invalidate its own regulations is not well taken. Cf. Angelica Textile Services, Inc. v. United States, 95 Fed. Cl. 208, 221-22 (2010) (affording Skidmore deference to agency Guidelines the Government argued it could ignore and finding that the Government's argument was not well taken). It is well settled that "[n]ormally, a party cannot attack its own proposed agency action." George Washington Univ. v. Dist. of Columbia, 318 F.3d 203, 211 (D.C. Cir. 2003). As the Supreme Court stated, "[n]either in criminal nor in civil cases will the law allow a person to take advantage of his own wrong." Diaz v. United States, 223 U.S. 442, 458 (1912) (quoting with approval Falk v. United States, 15 App. D.C. 446, 460). Defendant's tack is particularly troubling given that the Government is attacking the validity of the regulation to defeat jurisdiction and preclude relief after having followed the regulation in administering this VA program for some five years. The VA invoked § 17.56 in its authorizations during this time period to establish the rate of payment for providers. See Pl.'s Supp. Br., Exs. D and I. There is evidence in the record that the VA issued authorizations stating payment would be made at the rate specified in § 17.56. See Pl.'s Supp. Br., Ex. I ("VA payment for services pursuant to this authorization shall be the lesser of the actual amount billed, or the amount calculated using the 75th percentile methodology set forth in 38 C.F.R. § 17.56(c) . . ."). At oral argument, counsel for Defendant acknowledged that the VA paid providers under the regulation it now claims is invalid. Tr. 35. This Court will not countenance Defendant's attempt to attack and nullify its own regulation after it followed that regulation for years when it suited it to do so.

More fundamentally, however, Defendant's efforts to defeat jurisdiction by challenging the validity of its own regulation evinces a misunderstanding of the requisite for pleading jurisdiction in this Court. It is not necessary for this Court to adjudicate the procedural propriety of a regulation's promulgation in order to assess whether that regulation can be a money-mandating source for Tucker Act jurisdiction. As the Federal Circuit explained:

> the issue of whether a source is money-mandating is addressed in a two-step process. See Gollehon Farming v. United States, 207 F.3d 1373, 1378-80 (Fed. Cir. 2000) (citing Banks v. Garrett, 901 F.2d 1084, 1087-88 (Fed. Cir. 1990)). As a first step, and for purposes of satisfying the jurisdictional requirement that a money-mandating statute or regulation is before the court, the plaintiff need only make a non-frivolous allegation that the statute or regulation may be interpreted as money-mandating. The non-frivolous allegation satisfies the jurisdictional requirement. If, as a second step, the issue of jurisdiction is later pressed and it is subsequently decided that the statute or regulation is not money-mandating, then

_____

views, or arguments with or without opportunity for oral presentation." 5 U.S.C. § 553(b)-(c) (2006).

the case is dismissed for failure to state a claim upon which relief can be granted. Gollehon, 207 F.3d at 1379.

Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (emphasis added); accord Engage Learning, Inc. v. Salazar, 660 F.3d 1346, 1354 n.4 (Fed. Cir. 2011) ("[W]e have held that, for Tucker Act jurisdiction the determination of whether a claim's source is money-mandating shall be determinative both as to the question of the court's jurisdiction and thereafter as to the question of whether, on the merits, plaintiff has a money-mandating source on which to base his cause of action.") (quoting Moden v. United States, 404 F.3d 1335, 1341 (Fed. Cir. 2005)) (emphasis added) (internal quotations omitted).  Thus, given that the regulation in question had been on the books and followed for some five years, Plaintiff has satisfied the Tucker Act's jurisdictional requirement by making a "nonfrivolous allegation" that the regulation "may be interpreted as money-mandating," notwithstanding Defendant's suggestion that the regulation was invalidly promulgated.  This alleged deficiency relates to whether the regulation can be a source for monetary relief on the merits, not whether the Court has jurisdiction to entertain this action.  Fisher, 402 F.3d at 1172.[8]

In its 12(b)(6) motion, Defendant further argues that the regulation cannot be a money-mandating source of relief.  The Court disagrees.  Even if this Court were to find that the 2005 regulation is invalid, this finding would not operate to vacate the regulation.  Defendant urges this Court to find 38 C.F.R. § 17.56 invalid from March 2005 until February 2011, but does not ask this Court to vacate the regulation.  Declaring a regulation invalid does not go so far as vacating that regulation.  See Heartland Reg'l Med. Ctr. v. Sebelius, 566 F.3d 193, 198 (D.C. Cir. 2009) ("the terms 'invalid' and 'vacated' are not synonyms").  Specifically, finding a regulation invalid for lack of notice and comment does not operate to nullify the regulation. Rather, as courts have recognized, a regulation found invalid on this ground may remain in place pending a curative rulemaking.  Id.; see, e.g., Rodway v. United States Dept. of Agric., 514 F.2d 809, 817 (D.C. Cir. 1975) (holding regulations adopted without notice and comment were "invalid as promulgated" but declining to vacate the regulations).  In Rodway, the Department of

_____

[8]  Moreover, the notice and comment defect was corrected by the time this lawsuit was filed, meaning that there was a valid money-mandating regulation in effect at the time this Court must assess jurisdiction.  "It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'"  Grupo Dataflux v. Atlas Global Grp, L.P., 541 U.S. 567, 570 (2004) (quoting Mollan v. Torrance, 9 Wheat. 537, 539 (1824)); Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1337 (Fed. Cir. 2008).  Defendant is urging the Court to declare the regulation invalid between March 2005, and February 2011, nunc pro tunc, yet Defendant concedes that the procedural defect -- the failure to provide notice and an opportunity for comment -- was cured with another proposed rulemaking in 2010.   As Defendant's counsel acknowledged at oral argument, that procedural infirmity was corrected when the amended version of § 17.56 took effect in February 2011, because that amendment had been subject to notice and comment.  Tr. 33-34.  Plaintiff filed its complaint on May 12, 2011 -- after the VA had amended § 17.56.  Thus, by Defendant's own admission, there was a validly promulgated regulation mandating payment for dialysis services at non-VA facilities at the time of the filing of this lawsuit, providing a predicate for Tucker Act jurisdiction.

Agriculture failed to utilize notice and comment procedures for some aspects of regulations governing the allotment of food stamps.  514 F.2d at 814.  Instead of vacating the challenged regulations, the <u>Rodway</u> Court ordered that such regulations "must continue in effect . . . until validly promulgated regulations can take their place."  <u>Id.</u> at 817.  The <u>Rodway</u> Court did not vacate the regulations because of the impact vacating the regulations would have had on millions of Americans who depended on food stamps.  <u>Id.</u>  In a similar vein, in <u>Chamber of Commerce of United States v. S.E.C.</u>, the District of Columbia Circuit held that the Securities and Exchange Commission was required to provide opportunity for notice and comment when it relied on extra-record evidence to develop cost estimates as part of a rulemaking.  443 F.3d 890, 901-02 (D.C. Cir. 2006).  Instead of vacating the rule immediately, the <u>Chamber of Commerce</u> Court delayed vacating the rule, withholding the issuance of its mandate for 90 days to reopen the record to permit notice and comment.  <u>Id.</u> at 909.

Defendant has not asked this Court to vacate the regulation and acknowledges that under the APA only district courts have the jurisdiction to fashion such relief.  Tr. 37; <u>see</u> <u>Crocker v. United States</u>, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (per curiam) (stating the Court of Federal Claims "correctly held that it lacks the general federal question jurisdiction of the district courts, which would allow it to review the agency's actions and to grant relief pursuant to the Administrative Procedure Act . . . .").

No court of competent jurisdiction has vacated the regulation.  Even if this Court were to find the 2005 regulation invalid under the APA, that finding would not operate to vacate the regulation or prevent it from being a money-mandating source under which Plaintiff may recover.  As such, Plaintiff has stated a claim upon which relief may be granted.

**<u>The Court Has Jurisdiction over Plaintiff's Claim That the VA Failed to Pay DaVita at the Rates Set Forth in the 2009 Contract</u>**

In Count II, Plaintiff claims that the VA paid it at less than the "contracted rates" for dialysis services provided to veterans.  Specifically, Plaintiff alleges that under the 2009 contract governing the provision of dialysis services to veterans within eight Veteran Integrated Service Networks, Defendant is paying and has paid DaVita at rates lower than those required by the contract.  Plaintiff seeks a declaratory judgment "that the VA is required to pay DaVita in accordance with the Contract for all covered services provided within contracted [Veteran Integrated Service Networks]."  Am. Compl. 14.  The contract expressly provides that it is subject to the CDA.  Am. Compl., App. 34.

Defendant argues that the Court lacks jurisdiction over Count II for two reasons.  First, Defendant asserts that Plaintiff did not submit a proper claim to the contracting officer because the gravamen of its claim in Count II is a request for monetary relief and Plaintiff did not seek a sum certain.  Second, Defendant asserts that even if Plaintiff had submitted a proper CDA claim, Plaintiff is not entitled to an order "'declaring that the VA is required to pay DaVita in accordance with the Contract for all covered services provided within contracted [Veteran Integrated Service Networks]'" because the 2009 contract was an IDIQ contract and not a requirements contract.  Def.'s Mot. 32 (quoting Am. Compl. 14).

**Plaintiff Submitted a Proper Claim Seeking an Interpretation of the Contract**

In its January 13, 2010 claim to the contracting officer -- a certified Request for Final Decision Under Contract No. VA 791-P-0079 -- Plaintiff stated that the VA was refusing to honor the contract rate when Plaintiff provided dialysis services in networks covered by the contract and requested that "the Contracting Officer issue a Final Decision, interpreting the Contract to require that all authorizations for dialysis services issued to DaVita by the [Veteran Integrated Service Networks] covered by the Contract . . . are orders under the Contract that must be paid at the Contract rate." Am. Compl. Ex. H, App. 94. On May 14, 2010, the contracting officer issued a final decision rejecting Plaintiff's interpretation of the contract. Am. Compl. Ex. I, App. 101-03.

Defendant contends that Plaintiff's CDA claim, while styled as one seeking contract interpretation, was actually seeking monetary relief and failed to specify a sum certain as required by the CDA. Defendant misapprehends what is clearly a valid claim seeking an interpretation of the contract. It is well established that the Court can entertain a CDA claim that requests an interpretation of the contract. 41 U.S.C. § 605 (2006); Alliant Techsystems, Inc. v. United States 178 F.3d 1260, 1270 (Fed. Cir. 1999). In Alliant, the contractor filed an action seeking a declaration that it was not obligated to perform because the government had not validly invoked the option clause. The Federal Circuit found that the CDA permits a contractor to seek judicial resolution of its rights under the contract while performance is ongoing, stating:

> In responding to such a request, the court or board is free to consider the appropriateness of declaratory relief, including whether the claim involves a live dispute between the parties, whether a declaration will resolve that dispute, and whether the legal remedies available to the parties would be adequate to protect the parties' interests.

178 F.3d at 1271. The Alliant Court noted that the FAR's definition of "claim" includes "the adjustment or interpretation of contract terms." Id. at 1265. The Court continued: "[t]o hold that the disputes clause bars any pre-performance claim seeking an interpretation of contract terms would render largely meaningless those portions of the definition of claim that refer to requests for nonmonetary relief." Id. at 1267.

The gravamen of Plaintiff's instant claim is not a request for a sum certain -- it is a threshold claim for contract interpretation. Defendant cites Weststar Engineering, Inc., ASBCA No. 52484, 02-1 BCA ¶ 31759, at *4, for the proposition "[w]here the gravamen of a claim is money, the contractor cannot avoid the requirement for a sum certain and certification by casting it as a claim for contract interpretation." Def.'s Supp. Br. 21. While this legal proposition is accurate, Defendant has misconstrued the nature of Plaintiff's claim here. Plaintiff requested a decision that "DaVita is entitled to payment at the rates included in Schedule A.3 of DaVita's VA Contract" for "dialysis services provided pursuant to authorizations issued by Contract [Veteran Integrated Service Networks]." Am. Compl., Ex. H, App. 99. This is quintessentially a claim for the interpretation of the contract's payment terms. See CW Gov't Travel, Inc. v. United States, 63 Fed. Cl. 369, 383-86 (2004) (finding jurisdiction when plaintiff sought a declaratory judgment that it was the exclusive travel services provider for all Military Entrance Processing Stations under the contract at issue); GPA-1, LP v. United States, 46 Fed. Cl. 762,

772 (2000) (denying motion to dismiss for lack of jurisdiction under the CDA when plaintiff sought a declaratory judgment that its interpretation of the rental payment due date was correct, which would determine the amount of arrears owed).

**Plaintiff May Be Entitled to Declaratory Relief**

Defendant further argues that the Court must dismiss Count II because the language in the contract cannot be reasonably construed to afford Plaintiff the relief that it seeks.  Defendant contends that Plaintiff's claim is based on the 2009 contract being a requirements contract, instead of an IDIQ contract.[9]  Defendant asserts:

> Should the Court reach the issue, oral argument confirmed that DaVita as a matter of law is not entitled to the declaratory order it seeks: an order "declaring that the VA is required to pay DaVita in accordance with the Contract for all covered services provided within contracted [Veteran Integrated Service Networks]."  . . .  Simply, no express provision in the contract or any alleged implied contract entitles DaVita to the relief it seeks.
>
> . . .
>
> In its January 13, 2010 submission and at oral argument, TR134, DaVita also referenced clause C.2 52.216-18 ORDERING (Oct 1995), Doc. 23-1, p. 39.  Clause C.2 provides that "[a]ny . . . services to be furnished under this contract shall be ordered by the issuance of delivery or task orders . . . "and that [a]ll . . . task orders are subject to the terms and conditions of this contract."  This provision solely applies to "service to be furnished under this contract" and in no way warrants or represents in any way that the VA will not seek to acquire services from DaVita by means other than the contract. This contract itself is an indefinite quantity contract.  As such, the Government may obtain the exact same services from any other vendor so long as the minimum guarantee quantity is satisfied.  The inclusion of a standard Order Limitations Clause, FAR 48 C.F.R. § 52.216-19, which sets forth ordering parameters for orders from the contractor, in no way restricts the Government from placing orders with DaVita not subject to the contract.

Def.'s Supp. Br. 23-24.

Defendant misapprehends Plaintiff's position.  Plaintiff seeks a declaratory order providing that "when the VA obtains dialysis services from DaVita in the eight contracted [Veteran Integrated Service Networks], it must comply with the terms of the Contract, including the price term, even if the VA has already fulfilled the contract minimum."  Pl.'s Opp'n 27.  Plaintiff continues:

---

[9] At oral argument, the Court summarily denied this aspect of Defendant's motion.  Tr. 134.

The VA can seek services from any other provider, as long as it meets it obligations to DaVita.  It can even seek services from DaVita outside of contracted [Veteran Integrated Service Networks] without triggering its obligations under the Contract.  But, when the VA "order[s]" services from DaVita 'during the contract term' in a [Veteran Integrated Service Networks] <u>covered by the contract</u>, both DaVita and the VA must comply with the terms of their agreement.

<u>Id.</u> at 29-30 (emphasis added).  As such, DaVita is simply seeking an interpretation that it is entitled to payment for services provided under the contract at the contract rate.  <u>Id.</u> at 29.  The vehicle under which these services were acquired -- the 2009 contract or other authorizations -- is a matter to be determined after full development of the record.  Because Plaintiff may be entitled to the declaratory relief it seeks, Defendant's motion to dismiss for failure to state a claim on this ground is denied.

## <u>Conclusion</u>

Defendant's motion to dismiss Plaintiff's amended complaint is **DENIED**.  The Court will hold a telephonic status conference on **April 8, 2013, at 4:00 p.m.** to discuss further proceedings.

<u>s/Mary Ellen Coster Williams</u>
**MARY ELLEN COSTER WILLIAMS**
**Judge**