# In the United States Court of Federal Claims

### No. 11-297C
### (Filed: September 29, 2016)[1]

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| **DAVITA HEALTHCARE PARTNERS, INC. (f/k/a/ DAVITA INC., f/k/a TOTAL RENAL CARE HOLDINGS, INC., f/k/a MEDICAL AMBULATORY CARE DELAWARE, INC.), and PHYSICIANS DIALYSIS, INC., and PHYSICIANS DIALYSIS VENTURES, INC., and 175 DIALYSIS CENTER OWNERS (d/b/a 1,462 DIALYSIS CENTERS),** | **Motion to Compel; Work-Product Protection; RCFC 26(b)(3); Testifying Experts; Draft Expert Reports; RCFC 26(b)(4)(B); Communications with Counsel; RCFC 26(b)(4)(C); Expert Compensation; 2010 Amendments to Fed. R. Civ. P. 26.** |

Plaintiffs,

v.

**THE UNITED STATES,**

Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Bobby R. Burchfield and Matthew M. Leland, King & Spalding LLP, 1700 Pennsylvania Avenue, NW, Suite 200, Washington, D.C. 20006, and Paul M. Thompson, McDermott Will & Emery LLP, 500 North Capitol Street, NW, Washington, D.C. 20001, for Plaintiffs DaVita HealthCare Partners Inc. and 1,236 Dialysis Center Owners (Wholly Owned Entities).

Jason A. Levine and Thomas W. Bohnett, Vinson & Elkins LLP, 2200 Pennsylvania Avenue, NW, Suite 500 West, Washington, D.C. 20037, for Plaintiffs 175 Dialysis Centers (Joint Venture and Managed Entities).

Benjamin C. Mizer, Robert E. Kirschman, Jr., Martin F. Hockey, Jr., and John S. Groat, United States Department of Justice, Civil Division, Commercial Litigation Branch, PO Box 480, Ben Franklin Station, Washington, D.C. 20044, for Defendant. Jason Fragoso and Frank V. DiNicola, Department of Veterans Affairs, Office of General Counsel, of Counsel.

---

[1]     The Court issued this order under seal on September 16, 2016, and directed the parties to file proposed redactions by September 23, 2016.  The Court publishes this order indicating redactions by asterisks "[***]," and correcting errata.

---

### OPINION AND ORDER DENYING DEFENDANT'S MOTION TO COMPEL

---

**WILLIAMS**, Judge.

This matter comes before the Court on Defendant's motion to compel production of 86 documents withheld as attorney work product. The documents were prepared by, or relate to, Plaintiffs' testifying expert witness on damages, Ms. Laureen Ryan. Defendant further requested that Plaintiffs provide a revised privilege list clarifying what facts or data provided by Plaintiffs' counsel the expert used in creating her report. The Court held oral argument on August 10, 2016, and granted Defendant's request for a more detailed privilege log. Plaintiffs submitted their revised privilege log on August 11, 2016, and Defendant renewed its motion to compel on August 16, 2016.[2]

In its renewed motion, Defendant narrowed its request to 58 documents - - document numbers 1-6, 8-13, 16-32, 44-48, and 53-86 on Ms. Ryan's revised privilege log. The documents fall into the following two categories:

1) All work papers, including scripts, spreadsheets, graphs, and presentations that Ms. Ryan made to counsel containing claims data analyses;

2) Work papers relating to Ms. Ryan's compensation.

For the reasons stated below, the Court denies Defendant's sixth motion to compel.

### Discussion

### The Work-Product Doctrine: Legal Standards

Under the work-product doctrine, "attorney work-product protection attaches to documents prepared in anticipation of litigation or for trial by a party or his representative." Blue Lake Forest Prods., Inc. v. United States, Nos. 01-570C, 01-627C, 04-501C, 2007 WL 5161595, at *1 (Fed. Cl. Mar. 29, 2007) (internal citation omitted). The core intent behind the work-product doctrine is to shelter "the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." United States v. Nobles, 422 U.S. 225, 238 (1975). "Essentially, the work-product doctrine encourages attorneys to write down their thoughts and opinions with the knowledge that their opponents will not rob them of

---

[2]     On September 12, 2016, Defendant filed a Reply in support of this renewed motion to compel further requesting that Plaintiffs produce documents listed on a different privilege log - - Ms. Ryan's August 18, 2016 privilege log. Def.'s Second Reply App. 2-17. By order dated September 15, 2016, Defendant's Reply was stricken from the record as procedurally deficient. In the event that Defendant seeks to compel production of documents on the August 18, 2016 privilege log that are described differently than documents covered by this Order, Defendant shall file a separate motion and identify which documents it seeks to compel. As such, this Order only covers documents on Ms. Ryan's August 11, 2016 privilege log.

the fruits of their labor." In re EchoStar Commc'ns Corp., 448 F.3d 1294, 1301 (Fed. Cir. 2006) (citing Hickman v. Taylor, 329 U.S. 495, 511 (1947)).

The work-product doctrine is codified in Rule 26(b)(3) of the Rules of the Court of Federal Claims ("RCFC"), which provides in pertinent part:

> **(A) Documents and Tangible Things.** Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But subject to RCFC 26(b)(4), those materials may be discovered if:
>
> > (i) they are otherwise discoverable under RCFC 26(b)(1); and
> >
> > (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> **(B) Protection Against Disclosure.** If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

RCFC 26(b)(3)(A)-(B). In other words, the party asserting work-product protection carries the burden to show that the material in question is a document or tangible thing, prepared in anticipation of litigation by or for a party or its representative. RCFC 26(b)(3)(A); RCFC 26(b)(5); see also Hickman, 329 U.S. at 511-12. Rule 26(b)(3)(a) provides that a party's "representative" may include "the other party's attorney, consultant, surety, indemnitor, insurer, or agent" - - but does not include an expert. RCFC 26(b)(3)(a); see Republic of Equador v. Hinchee, 741 F.3d 1185, 1190 (11th Cir. 2013).

The work-product doctrine is not an absolute bar to discovery. EchoStar, 448 F.3d at 1301. Under Rule 26(b)(3)(A), a party may discover documents otherwise protected under the work-product doctrine upon a showing of "substantial need of the materials in the preparation of the party's case" and inability to obtain the substantial equivalent by other means without undue hardship. Id. at 1302 (citation omitted). This "substantial need" exception, however, applies only to the underlying facts in a work-product protected document. Id. As such, the Court is still required to protect "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative." Id.

Testifying experts' documents and tangible things prepared and provided to counsel in anticipation of litigation are not protected under the general work-product doctrine embodied in Rule 26(b)(3)(A), but rather are protected under a more specific provision, Rule 26(b)(4)(C), addressing communications between counsel and testifying experts. In addition, "drafts of any

report or disclosure" are protected under Rule 26(b)(4)(B).  See Republic of Ecuador v. Mackay, 742 F.3d 860, 865-66, 871 (9th Cir. 2014); Hinchee, 741 F.3d at 1190-91.[3]

Rule 26(b)(4)(C), "Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witness," provides:

> RCFC 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under RCFC 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:
>
> (i) relate to compensation for the expert's study or testimony;
>
> (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
>
> (iii) identify assumptions that the party's attorney provided and that the expert relied on in the forming of the opinions to be expressed.

RCFC 26(b)(4)(C).

Prior to the 2010 amendments to the Federal Rules of Civil Procedure and the corresponding 2011 amendments to the Rules of the Court of Federal Claims, courts generally applied a "bright-line rule mandating disclosure of all documents, including attorney opinion work product, given to testifying experts."  Mackay, 742 F.3d at 869 (quoting Reg'l Airport Auth. of Louisville v. LFG, LLC, 460 F.3d 697, 717 (6th Cir. 2006)).  This bright-line rule had "undesirable effects" such as impeding the efficient interaction and communication between counsel and experts that led to experts adopting strategies that shielded their communications from discovery but interfered with their work and increased litigation costs.  Mackay, 742 F.3d at 869 (quoting Fed. R. Civ. P. 26 Advisory Committee Notes (2010 amendments)).  These "undesirable effects" led to the 2010 change in the Federal Rules that created an express but limited work-product protection for collaborative interactions between counsel and testifying experts.  Id.; see e.g., Damon W.D. Wright, Expert Discovery Returns to the Past, 58 Fed. Law. 32, 33 (Jan. 2011) ("The goal" behind the 2010 amendments "is to make working with expert witnesses easier, expert-intensive litigation less expensive, and expert discovery more focused on the actual opinions themselves").

The 2010 Advisory Committee notes clarify how the work-product doctrine applies to testifying experts:

> Rule 26(b)(4)(C) is added to provide work-product protection for attorney-expert communications regardless of the form of the communications, whether oral, written, electronic, or otherwise.  The addition of Rule 26(b)(4)(C) is designed to protect counsel's work product and ensure that lawyers may interact with retained

---

[3]     Identical versions of the 2010 amended Federal Rules of Civil Procedure 26(b)(4)(B) and (C) were added to the Rules of the Court of Federal Claims in 2011, as RCFC 26(b)(4)(B) and (C).

experts without fear of exposing those communications to searching discovery. The protection is limited to communications between an expert witness required to provide a report under Rule 26(a)(2)(B) and the attorney for the party on whose behalf the witness will be testifying, including any "preliminary" expert opinions.

Fed. R. Civ. P. Rule 26 Advisory Committee Notes, Subdivision (b)(4) (2010).

The Rules and Advisory Committee Notes also confirm that work-product protection extends to drafts of expert reports or disclosures. Rule 26(b)(4)(B), "Trial-Preparation Protection for Draft Reports or Disclosures," provides:

RCFC 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under RCFC 26(a)(2) [including disclosure of the testifying expert providing a report], regardless of the form in which the draft is recorded.

RCFC 26(b)(4)(B). The Notes to this Rule explain:

Rule 26(b)(4)(B) is added to provide work-product protection under Rule 26(b)(3)(A) and (B) for drafts of expert reports or disclosures. This protection applies to all witnesses identified under Rule 26(a)(2)(A), whether they are required to provide reports under Rule 26(a)(2)(B) or are the subject of disclosure under Rule 26(a)(2)(C). It applies regardless of the form in which the draft is recorded, whether written, electronic, or otherwise. It also applies to drafts of any supplementation under Rule 26(e).

Fed. R. Civ. P. Rule 26 Advisory Committee Notes, Subdivision (b)(4) (2010).

**Ms. Ryan's Expert Reports**

On July 29, 2016, Plaintiffs filed Ms. Ryan's April 15, 2016 Expert Report and June 15, 2016 Expert Rebuttal Report.[4] Ms. Ryan's April 15, 2016 report states that "Plaintiffs produced non-contract claims (also referred to as fee-based claims) data for services rendered to the VA during the Damage[s] Period [2005-2011]." Ryan Report 23. This report contains a section titled "Key Data Sources & Summary Statistics," which states that Plaintiffs' damages analysis "is based on the claims data that Plaintiffs produced electronically in this matter." Id. Ms. Ryan continues for six pages to discuss each source of data related to her damages calculations, including the data produced by the VA. Id. at 23-29. Ms. Ryan's report also includes a 12-page "List of Information Considered," identifying all court filings, declarations, depositions and exhibits, and data produced by Plaintiffs and Defendant, as well as all Government files, correspondence, miscellaneous documents and files, websites, and other publicly available information that Ms. Ryan considered in forming her expert report. Ryan Report Ex. B, at 1-12. Both Plaintiffs' and the Government's data sets providing the factual bases for Ms. Ryan's opinions are listed in her report. Id. at 5-7.

---

[4]     On July 28, 2016, the Court ordered the parties to file Ms. Ryan's report to facilitate resolution of the instant motion.

Ms. Ryan also appended the following six exhibits to her report detailing the "Key Sources and Summary Statistics" on which she relied:  1) Plaintiffs' Claim-Level and Charge-Level Data Summary, 2) Plaintiffs' Payment Data Summary, 3) Charge-Level Data Summary of the VA Dataset, 4) VA Fee Schedule Production Summary Statistics, 5) Charge-Level Data Summary, and 6) HCPCS/CPT [Healthcare Common Procedure Coding System] Codes and Modifiers in the Plaintiffs' Claim Data.   Ryan Report Exs. C.1-C.6.   These six exhibits summarized the factual basis from which Ms. Ryan derived her damages calculations.  Instead of listing each of the 71,697 claims separately, the report summarized that these claims were tied to 4,680 patients, with a total amount billed of [***].  As the Report notes, the data underlying these claims have already been produced to Defendant.  Ryan Report 23; see DaVita HealthCare Partners v. United States, 125 Fed. Cl. 394, 397-98 (2016) (noting that DaVita finished its production of "the remaining relevant claim data in rolling productions on November 18, 2014, December 19, 2014, January 16, 2015, and January 28, 2015," which contain "millions of lines of charge- and claim-level data regarding non-contractual claims by Plaintiffs").

## Ms. Ryan's Expert Work Papers, Scripts, Spreadsheets, Graphs, and Presentations Provided to Counsel

Defendant seeks all 86 of Ms. Ryan's "work papers" listed on Plaintiffs' privilege log, or "at a minimum" 26 of the 86 documents listed on Plaintiffs' privilege log described as "spreadsheets with claims data analysis for presentation to counsel," "graphs with claims data analysis for presentation to counsel," and a "presentation to counsel providing analysis of claim related documents and data," dated from February 13, 2015 through March 10, 2016.  Def.'s Mot. 4, 6, App., at A14-15 (document numbers 8, 11-13, 16-31, 41, 44-45, 47-48).  Defendant added another 10 documents to this list in its renewed motion to compel.  Def.'s Renewed Mot. 2 (adding document numbers 1-6, 9, 10, and 46).  Defendant argues that the general attorney work-product doctrine provides no basis to withhold expert work papers from disclosure and that Plaintiffs were required to disclose all the facts or data considered by Ms. Ryan in forming her opinions under Rule 26(a)(2)(B)(ii) - - governing the disclosures in a testifying expert's report.  Id. at 5-6.  Defendant contends that Plaintiffs are withholding communications that identify facts or data that Plaintiffs' attorney provided and that Ms. Ryan considered in forming her opinions.

Plaintiffs counter that the spreadsheets, scripts, analyses, and presentations, are privileged work product containing attorney communications with the testifying expert that are protected under Rule 26(b)(4)(C), or draft documents that are attorney work product under Rule 26(b)(4)(B).

### Spreadsheets, Scripts, Analyses, and Presentations

Defendant argues that "the attorney work-product doctrine does not extend to testifying experts."  Def.'s Mot. 4.  However, in 2010, the current version of Rule 26(b)(4)(C) was added to the Rules,[5] which provides that the attorney work-product doctrine does in fact apply to counsel's communications with testifying expert witnesses unless these communications fall within three enumerated exceptions - - documents relating to compensation, documents the

---

[5]    The 2009 versions of Rules 26(b)(4)(B) and (C) were renumbered in 2010 as Rules 26(b)(4)(D) and (E), respectively.

party's attorney provided the expert, and assumptions the expert relied on in making her report. RCFC 26(b)(4)(B)-(C); Hinchee, 741 F.3d at 1190-91; Mackay, 742 F.3d at 865-66.  As such, while testifying expert materials are not broadly entitled to "presumptive" work-product protection, it is well settled that the 2010 amended Rule 26(b)(4)(C) affords limited work-product protection to testifying experts' communications with counsel.  See Mackay, 742 F.3d at 865-66, 871.

Plaintiffs assert that Ms. Ryan's spreadsheets, scripts, analyses, and presentations are protected "communications from Plaintiffs' testifying expert, Ms. Ryan, to Plaintiffs' counsel about Ms. Ryan's preliminary claims data analyses and report strategies" protected under Rule 26(b)(4)(C).  Pls.' Resp. 5.  Ms. Ryan's privilege log supports Plaintiffs' argument.  Each entry in Ms. Ryan's privilege log describes her analyses communicated to counsel, in the form of scripts, presentations, outlines, and spreadsheets, prepared for the instant litigation.  Pls.' Resp. Appx-026-27.  While Defendant asserts that the work-product protection does not cover a testifying expert's work papers reflecting that expert's preliminary analysis, the 2010 Advisory Committee Notes on Rule 26(b)(4)(C) directly refute that argument.  These Notes state:

> The [Rule 26(b)(4)(C)] protection is limited to communications between an expert witness required to provide a report under Rule 26(a)(2)(B) and the attorney for the party on whose behalf the witness will be testifying, including any "preliminary" expert opinions.

Fed. R. Civ. P. Rule 26 Advisory Committee Notes, Subdivision (b)(4) (2010) (emphasis added). Documents reflecting Ms. Ryan's preliminary analysis are work product whether viewed as a "preliminary expert opinion" or as a communication from expert to counsel reflecting their joint effort to develop strategy.  E.g., Ryan Revised Privilege Log No. 1 (Aug. 11, 2016) ("Ryan Rev. P. L.").

Defendant mistakenly equates the expert's spreadsheets, graphs, and analyses in her presentations to counsel with "facts and data."  These formulations, however, are interpretations of data that reflect counsel's mental impressions and result from the expert's and counsel's collaborative efforts to organize, marshal, and present data.  This selective presentation of data is separate and distinct from the underlying facts and data themselves.  See United States v. Veolia Env't N. Am. Operations, Inc., No. 13-mc-03, 2014 WL 5511398, at *5 (D. Del. Oct. 31, 2014) (finding emails between a testifying expert and counsel collaborating on the creation of a valuation report to be protected under Rule 26(b)(4)(C)).  Indeed, because Ms. Ryan included an extensive list of facts and data she considered in formulating her report in her description of "Key Data Sources," Defendant has obtained a full factual predicate for this expert's opinions and has what it needs to probe and test those opinions.  See Ryan Report 23-29.

Plaintiffs further argue that document numbers 15, 33-34, 36-38, 40, 42-43, 46, and 49-52 listed on Ms. Ryan's privilege log are protected as "drafts" under rule 26(b)(4)(B) as they were created for and included in Ms. Ryan's draft report.  As Rule 26(b)(4)(B) explicitly states, an expert's draft report is protected under the attorney work-product privilege "regardless of the form in which the draft is recorded."  RCFC 26(b)(4)(B).  Spreadsheets, graphs, presentations, and charts are protected under Rule 26(b)(4)(B), so long as the documents were prepared by the testifying expert to be included in draft expert reports.  See, e.g., Deangelis v. Corzine, No. 11-

cv-07866, 2016 WL 93862, at *4 (S.D.N.Y. Jan 7, 2016) (recognizing that an expert's prepared chart used in a draft expert report was properly protected under the attorney work-product privilege); Veolia, 2014 WL 5511398, at *5 (finding draft presentations that contain "summaries and conclusions" that reflect "counsel's collaborative interactions with expert consultants" to be protected as privileged); see also In re Application of Republic of Ecuador, 280 F.R.D. 506, 512-13 (N.D. Cal. 2012), aff'd, sub nom, Mackay, 742 F.3d 860 (9th Cir. 2014) (acknowledging that draft worksheets created by a testifying expert for use in his expert report would be protected under Rule 26(b)(4)(B), but the Rule "does not extend to the expert's own development of the opinions to be presented outside of draft reports").

In sum, Plaintiffs have met their burden to show that documents numbered 1-52 on Ms. Ryan's privilege log are properly protected under the work-product doctrine applied to testifying experts, and that documents numbered 15, 33-34, 36-38, 40, 42-43, 46, and 49-52, are protected as drafts for Ms. Ryan's "draft expert report" prepared for counsel in anticipation of the instant litigation.  Ryan Rev. P. L. Nos. 1-52.

### Work Papers Containing Facts or Data Used in Forming Expert Opinions

Second, citing Rule 26(a)(2)(B)(ii), Defendant seeks to compel production of the same 86 documents under a different Rule, claiming that they contain facts or data considered by Ms. Ryan in forming her opinions and that these facts and data are discoverable because they were provided by Plaintiffs' counsel to Ms. Ryan.  Invoking a different rule does not alter the character of the documents.  As found above, these documents do not contain a mere recitation of facts and data provided by counsel for the expert to review.  Moreover, the Rule Defendant invokes, Rule 26(a)(2)(B), applies to the expert's report, not expert-counsel communications.

Rule 26(a)(2)(B)(ii) provides:

**(B) Witnesses Who Must Provide a Written Report.**  Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.  The report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them . . . .

RCFC 26(a)(2)(B) (emphasis added).

Rule 26(a)(2)(B) thus mandates that an expert must include in her report the facts and data considered by the expert in forming her opinion.  Such a disclosure - - on the face of the report - - enables the opposing party to test the accuracy and applicability of the facts that the expert relied upon in forming her opinion.

The facts and data which Ms. Ryan considered in forming her opinions have already been produced to Defendant. Pls.' Resp. 6. As discussed above, Ms. Ryan's report details every document and data set she considered in forming her analyses. Defendant does not argue that Ms. Ryan's report or her disclosures are somehow insufficient or incomplete, but instead seeks documents containing Ms. Ryan's preliminary analyses of claims data and various damages scenarios, reflecting Plaintiffs' counsel's mental processes in developing litigation strategy, or the iterations of the expert's preliminary analyses communicated to counsel. Pls.' Resp. Appx-0026. These preliminary analyses are not discoverable. RCFC 26(b)(4)(C); see also Nobles, 422 U.S. at 238 ("At its core, the work-product doctrine shelters the mental processes of the attorney . . . .").

The 2010 Advisory Committee notes clarify that a party seeking discovery of "facts or data" provided by counsel or an expert is limited to facts and data - - not any further analyses of those facts and data:

> [U]nder Rule 26(b)(4)(C)(ii) discovery is permitted to identify facts or data the party's attorney provided to the expert and that the expert considered in forming the opinions to be expressed. The exception applies only to communications "identifying" the facts or data provided by counsel; further communications about the potential relevance of the facts or data are protected.

Fed. R. Civ. P. 2010 Advisory Committee Notes Subsection 26(b)(4) (emphasis added).

## Work Papers Related to Compensation

Defendant requests all of Ms. Ryan's "invoice[s] for services" numbered 53-86 on Plaintiffs' privilege log. However, all invoices reflecting Ms. Ryan's compensation were provided to Defendant. See Ryan Rev. P. L. Nos. 53-86 (Aug. 11, 2016) (describing the withheld documents as "detailed work descriptions, including descriptions of protected attorney-expert communications and work product . . . ."). Plaintiffs posit that Defendant is actually seeking "a line-by-line detail of the work performed, including descriptions of preliminary work, discussions with Plaintiffs' counsel, and work on drafts of the report," that were redacted from the invoices. Pls.' Resp. 8, Appx-010. Defendant does not dispute Plaintiffs' characterization of the redacted material but instead makes a strange argument that because the withheld "line-by-line detail" relates to tasks for which Ms. Ryan was compensated, this detail is not subject to the work-product doctrine. Def.'s Reply 4.

Defendant's argument is untenable. The fact that the redacted information relates to tasks for which the expert was compensated does not alter that information's privileged status. Of course, details of work revealed in the expert's work description would relate to tasks for which she was compensated, but Plaintiffs have established that this description itself reveals protected communications with counsel. This situation is analogous to protecting attorney-client privileged information contained in counsel's bills describing work performed. An attorney's description of work performed for a client in an invoice itself reflects privileged information that is routinely protected as privileged, despite the fact that it appears in a bill. See Chaudhry v. Gallerizzo, 174 F.3d 394, 402 (4th Cir. 1999) (recognizing that "'correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation,

litigation strategy, or the specific nature of the services provided, such as researching particular areas of law,'" are protected from disclosure) (quoting <u>Clarke v. Am. Commerce Nat'l Bank</u>, 974 F.2d 127, 129 (9th Cir. 1992)); <u>see also</u> <u>Amster v. River Capital Int'l Grp., LLC</u>, No. 00 CIV. 9708 (DCDF), 2002 WL 2031614, at *2 (S.D.N.Y. Sept. 4, 2002) (permitting a party to withhold the "breakdown of the expert's various services" appearing on an expert's bill while ordering production of a "statement of the total compensation paid to the expert").

Rule 26(b)(4)(C)(i)'s requirement for disclosure of compensation for an expert's study or testimony is not intended to expose privileged information.  As the 2010 Advisory Committee Note suggests, the focus of permitted discovery is on the amount of expert compensation, <u>not</u> on the tasks performed that led to compensation.  Fed. R. Civ. P. 26, 2010 Advisory Committee Note 172 (noting that any "benefits to the expert" are discoverable).  The Note further states that the objective of discovery into expert compensation "is to permit full inquiry into such potential source of bias" - - not a roving inquiry into litigation strategy documented in invoices.  <u>Id.</u>  That objective has been fully met here.  Plaintiffs disclosed all required information relating to the expert's compensation.  As Plaintiffs note in their Appendix, they produced Ms. Ryan's engagement letter, retainer, fee arrangement, and emails discussing her compensation.  Further, in her expert report, Ms. Ryan notes that she is being paid $725 per hour.  Pls.' Res. Appx-001; Ryan Report 6.  These disclosures comport with the exception to the work-product protection for expert compensation.  Additional disclosures of privileged communications on the invoices are not required.

### Conclusion

Defendant's motion to compel filed on June 3, 2016, and renewed on August 16, 2016, is **DENIED**.

 s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**